<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMINA BOOKEY MUDEY, | |
| Plaintiff, | Civil Action No. 09-1669 (SRC) (MAS) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA et al., | |
| Defendants. | |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court on two motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56: 1) by Defendant Corrections Corporation of America ("CCA"); and 2) by Defendant Irving Harold Smelson, M.D. ("Smelson"). For the reasons stated below, CCA's motion will be granted in part and denied in part, and Smelson's motion will be granted in part and denied in part.

## <u>BACKGROUND</u>

In brief, this case arises from a dispute over the medical care received by Plaintiff Amina Bookey Mudey while a civil immigration detainee at the Elizabeth Detention Center in 2007. The Amended Complaint alleges that Plaintiff received grossly inadequate medical care while detained, and asserts seven claims against the psychiatrist she alleges treated her, Irving Harold Smelson, M.D. ("Smelson"), against CCA, the operator of the facility, against the United States of America, and against a number of other members of the medical staff at the facility.

## ANALYSIS

I.      Relevant legal standard

    A.    Motions for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.   CCA's motion for summary judgment

CCA first moves for summary judgment on Count One, for medical malpractice, on the ground that all medical care was provided by the staff of the United States Public Health Service, not by CCA. Plaintiff's brief in opposition does not contest this. Rather, Plaintiff argues that her claim against CCA for negligence, in connection with CCA's duty to provide access to medical care, should proceed. This Court finds that Plaintiff has abandoned her claim against CCA for

3

medical malpractice. As to Count One, CCA's motion for summary judgment will be granted.

CCA next moves for summary judgment on Count Two, for negligence. CCA contends that, once the medical malpractice issue is eliminated, the only remaining negligence theory involves the duty to provide adequate access to medical care. The parties appear to be in agreement on this point: as to CCA, the only viable negligence theory in Count Two rests on CCA's duty to provide adequate access to medical care. CCA admits this duty in its moving brief: "CCA's only role in providing medical treatment to the detainees was to provide *access* to it." (CCA's Br. 6.) CCA further admits that it was contractually obligated to "ensure that detainees are provided access to sick call on a daily basis or as determined necessary by USPHS." (Collins Dec. Ex. A at § 5.4.18.)

Nonetheless, CCA contends that Plaintiff's claim "borders on patently frivolous." (CCA's Br. 11.) CCA supports this characterization by pointing to the evidence that Plaintiff was taken to the "pill line" on a daily basis, sometimes twice each day. CCA also contends that Plaintiff had further access to medical care through the use of "Sick Call slips" to request medical treatment. CCA contends that, in total, Plaintiff was brought to the medical unit 191 times in a period of 160 days. (CCA's Br. 14.)

Plaintiff makes several points in response. First, Plaintiff points to the evidence that she exhibited obvious symptoms of severe side effects within days of beginning Risperdal treatment, and that no one from CCA took steps to bring this to the attention of the medical staff. This alone is sufficient to defeat the motion for summary judgment. A reasonable jury could receive this evidence and conclude that CCA breached its duty of care to Plaintiff. Plaintiff has offered evidence which raises a genuine dispute as to the material factual question of whether CCA

breached its duty of care to Plaintiff.

Second, Plaintiff points to the evidence that, during the time she experienced severe abdominal and back pain, she filled out Sick Call slips on a daily basis and gave them to CCA security officers, but she was not taken for medical treatment.[1] Again, this evidence alone is sufficient to defeat the motion for summary judgment. A reasonable jury could receive this evidence and conclude that CCA breached its duty of care to Plaintiff. Plaintiff has offered evidence which raises a genuine dispute as to the material factual question of whether CCA breached its duty of care to Plaintiff.

Plaintiff has demonstrated that genuine disputes as to material facts preclude a grant of summary judgment. As to Count Two, CCA's motion for summary judgment will be denied.

### III. Smelson's motion for summary judgment

Smelson moves for summary judgment on Count Three, a <u>Bivens</u> claim for violation of constitutionally-protected rights, and Count Four, for intentional infliction of emotional distress. Smelson's position on Count Three is that the applicable standard is "deliberate indifference to serious medical needs," <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and that Plaintiff has no evidence that he was deliberately indifferent to Plaintiff's medical needs. As to Count Four, Smelson contends that Plaintiff has no evidence that he acted intentionally or recklessly to cause Plaintiff emotional distress.

In opposition, as to Count Three, Plaintiff contends that she has evidence of conduct that violated her constitutional rights under two theories: 1) Smelson administered Risperdal to

---

[1] CCA suggests that Plaintiff bears the blame for not receiving the medical treatment because she did not place the slips in the correct box. If this is CCA's actual position, it is outrageous. Plaintiff has testified that she gave the slips to CCA officers.

Plaintiff without having obtained her informed consent; and 2) Smelson continued to administer Risperdal despite obvious severe side effects.

As to the <u>Bivens</u> claim, in reply to the informed consent theory, Smelson argues that the Amended Complaint contains no such claim. It is true that, while Count III asserts a <u>Bivens</u> claim based on an informed consent theory, it refers to the Fifth Amendment and not the Eighth Amendment. It is well-settled that parties need not plead specific legal theories in the complaint. James Wm. Moore et al., Moore's Federal Practice - Civil § 8.04(3) (2011). Smelson cannot reasonably contend that the Amended Complaint failed to provide sufficient notice of a <u>Bivens</u> claim based on an informed consent theory.

While Smelson moves for summary judgment with the argument that Plaintiff has no evidence from which a reasonable finder of fact could find deliberate indifference to serious medical needs, Plaintiff makes clear in her opposition that she does not pursue a deliberate indifference theory, based on the Eighth Amendment protection against cruel and unusual punishment. Rather, Plaintiff relies on alternative theories based on constitutional protection of a prisoner's liberty interest. Plaintiff cites the Second Circuit's decision in <u>Pabon v. Wright</u>, 459 F.3d 241, 246 (2d Cir. 2006), which held:

> [T]he Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment. To establish a violation of this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment.

The record before this Court demonstrates that Plaintiff has offered sufficient evidence to establish all three elements, thus making out a <u>Bivens</u> claim.

Furthermore, the Second Circuit stated in Pabon that it was following the Third Circuit's decision in White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990), in which it held: "We hold that convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. . . A prisoner's right to refuse treatment is useless without knowledge of the proposed treatment."

Smelson's motion for summary judgment on the informed consent theory in Count Three thus fails because it is argued under the wrong legal theory. Plaintiff does not seek relief for the failure to obtain informed consent under an Eighth Amendment violation theory, applying a deliberate indifference standard. Rather, Plaintiff seeks relief under a Fourteenth Amendment violation theory. Viewing Plaintiff's proffered evidence from the standpoint of the test for such a theory advanced by the Second Circuit in Pabon, this Court does not find any failure of proof of any of the elements. As to the informed consent theory in Count III, Smelson has failed to show that he is entitled to judgment as a matter if law, and the motion for summary judgment will be denied.

Moreover, Smelson's motion for summary judgment on the informed consent theory must be denied because Plaintiff has raised a material factual dispute: she asserts that she could not, and did not, communicate with Dr. Smelson in English at the time he first prescribed Risperdal. (Murphy Dec. Ex. 7 at 13:3-7.) There is no dispute that Smelson did not use a Somali language interpreter when he interviewed Plaintiff. Smelson contends that he and Plaintiff communicated in English. This is a material dispute that needs to be resolved by a trier of fact, and precludes a grant of summary judgment on this theory.

As to the claim that Smelson continued to administer Risperdal despite obvious severe

7

side effects, Smelson argues convincingly that, under Third Circuit law, Plaintiff must offer expert medical opinion establishing a serious medical need. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). The Third Circuit has explained that, in certain situations (such as a gunshot wound), the seriousness of a medical condition would be obvious to the laypeople of a jury. Id. This is not such a situation. It would not be obvious to the laypeople of a jury whether Plaintiff's side effects from antipsychotic medication did or did not constitute a serious medical need. Expert medical opinion would be necessary.

The Supreme Court has explained that, in this Eighth Amendment context, the key question is whether a prison official has "exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Farmer v. Brennan, 511 U.S. 825, 843 (1994); see also Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) (quoting Farmer.) Dr. Butler's report does not provide evidence that there was a substantial risk of serious damage to Plaintiff's future health. In this regard, Dr. Butler's report is significant for what it does not say. Dr. Butler clearly believes that Plaintiff experienced unnecessary suffering from Risperdal's side effects, but he does not state that the side effects placed Plaintiff at a substantial risk of serious damage to her future health.[2] Plaintiff does not have the necessary expert medical evidence that Smelson's continuing to treat Plaintiff with Risperdal in the presence of side effects exposed her to a substantial risk of serious damage to her future health.

As for the Bivens claim related to Smelson's continuing to treat Plaintiff with Risperdal despite obvious severe side effects, Smelson has demonstrated that Plaintiff lacks the evidence

---

[2] Compare to Giles, in which the plaintiff's "medical expert presented unrebutted testimony that [plaintiff] was subjected to the risk of a life-threatening injury due to the delay." Giles, 571 F.3d at 330. Dr. Butler's report certainly provides evidence that Plaintiff suffered because of the Risperdal side effects, but not that she was at risk of major injury.

needed to prove an essential element of her case – that there was a substantial risk of serious damage to Plaintiff's future health.  This constitutes a complete failure of proof and, as to this part of Count III, Smelson's motion for summary judgment will be granted.

Smelson also moves for summary judgment on Count IV, for intentional infliction of emotional distress, on the ground that Plaintiff has no evidence that Smelson acted with the requisite mental state.  Count IV in the Amended Complaint states four categories of conduct by which various defendants are alleged to have intentionally inflicted emotional distress: 1) the misdiagnosis of Plaintiff and the prescription of Risperdal (Am. Compl. ¶ 76); 2) continuing to treat Plaintiff with Risperdal while she exhibited side effects from that medication (Am. Compl. ¶ 77); 3) ignoring Plaintiff's complaints of severe abdominal and back pain (Am. Compl. ¶ 78); and 4) denying Plaintiff access to medical care during the time she complained of severe abdominal and back pain (Am. Compl. ¶ 79).  As to Smelson, Plaintiff's opposition brief raises issues only with the first two categories of conduct, concerning the initial act of prescribing Risperdal and the subsequent acts of continuing treatment with Risperdal.

As to the first category, the initial act of prescribing Risperdal, Smelson points to the fact that Plaintiff's expert, Dr. Butler, stated in his report that a possible treatment for Plaintiff would have been "one or two doses of antipsychotic medication."  (Blackman Cert. Ex. D at 13.)  Smelson also points to the fact that Dr. Butler testified that he agreed with having given Plaintiff one or two doses of Risperdal.  (Blackman Cert. Ex. F at 9:23-10:11.)  The undisputed evidence shows, then, that Smelson's initially prescribing Risperdal was within accepted standards of medical care.  Given this undisputed fact, no reasonable finder of fact could conclude that Smelson acted intentionally or recklessly in initially prescribing Risperdal.

As to the act of continuing to treat Plaintiff with Risperdal despite the presence of side effects, Smelson points to the statement by Plaintiff's expert that "Risperdal has no side effects that are not common to every other antipsychotic." (Blackman Cert. Ex. D at 14.)  As to the mental state required to support a claim for intentional infliction of emotional distress, the New Jersey Supreme Court has stated:

> For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress.  Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.

Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988).  Plaintiff does not allege that Smelson intended to cause her emotional distress, but that his mental state was one of recklessness.  Dr. Butler's statement about the side effects of Risperdal precludes finding the requisite recklessness, because the corollary to Dr. Butler's statement is that administering Risperdal carries with it a high degree of probability that a patient will experience side effects that are common to the use of antipsychotic drugs.  There is no evidence in the record that there was a high degree of probability that severe emotional distress would follow from continued treatment with Risperdal.  Rather, the evidence from Plaintiff's expert suggests that it was probable that Plaintiff would suffer the side effects common to the use of antipsychotic medication.  No reasonable finder of fact could conclude that Smelson recklessly disregarded a high degree of probability that severe emotional distress would follow, when Plaintiff's expert concedes that the initial prescription of Risperdal was acceptable, and that Risperdal causes common side effects.

Furthermore, the New Jersey Supreme Court has held:

Second, the defendant's conduct must be extreme and outrageous.  The conduct

10

>must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id. (citations omitted).  The evidence related to defendant's mental state must be viewed in the context of these principles.  Plaintiff's evidence does not support finding that Smelson's conduct was outrageous in character.  To the contrary, Plaintiff's expert stated that prescribing Risperdal was acceptable care, and that Risperdal causes side effects common to antipsychotic medications.  This is nowhere close to conduct that goes beyond all possible bounds of decency.  No reasonable finder of fact could find otherwise.

Lastly, Plaintiff's expert's report simply does not support a claim for intentional infliction of emotional distress.  Dr. Butler's severest criticism of Smelson is that he failed to adequately monitor the side effects suffered by Plaintiff.  Dr. Butler states: "In my opinion, if Ms. Mudey had been appropriately monitored and steps taken to alleviate her suffering, she would not have suffered the side effects for the months that she did." (Blackman Cert. Ex. D at 14.)  A reasonable finder of fact might (or might not) find this to constitute negligence or medical malpractice, but the failure to monitor common side effects of a medication that was originally appropriately prescribed is not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress.

Plaintiff has failed to present evidence from which a reasonable finder of fact could conclude that a there was high degree of probability that severe emotional distress would follow from continued treatment of Plaintiff with Risperdal, or that Smelson's conduct in continuing treatment along this line was sufficiently extreme and outrageous as to be actionable.

As to Count IV, Smelson has shown that no disputed material facts preclude the entry of

judgment as a matter of law. As to Count IV, Smelson's motion for summary judgment will be granted.

## CONCLUSIONS

For the reasons stated above, both motions for summary judgment will be granted in part and denied in part. As to Count One, CCA has shown that it is entitled to judgment as a matter of law, and CCA's motion for summary judgment on Count One is granted. As to Count Two, CCA's motion for summary judgment is denied. As to the <u>Bivens</u> claim for continuing treatment with Risperdal despite serious side effects in Count Three, and as to Count Four, Smelson has shown that he is entitled to judgment as a matter of law, and his motion for summary judgment on Count Four and that aspect of Count Three is granted. As to the Count Three Bivens claim concerning the failure to obtain informed consent, Smelson's motion for summary judgment is denied.

                                                     s/ Stanley R. Chesler
                                            Stanley R. Chesler, U.S.D.J.

Dated: May 18, 2011